UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BMO HARRIS BANK N.A.,

    Plaintiff,

v.

CARY DEASON and EDWARD DEASON,

    Defendants.

Case No. 17-cv-4709 (JNE/LIB)

ORDER

BMO Harris Bank, N.A. ("BMO") brought this action for breach of contract, seeking to collect amounts owed under a loan agreement that was guaranteed by Cary Deason and Edward Deason ("the Deasons"). BMO moved for summary judgment against both Defendants. Neither Defendant responded.[1] For the reasons set forth below, BMO's motion is granted.

## BACKGROUND

In February 2014, GE Electric Capital Corporation, Inc. ("GECCI") entered into a loan agreement with MTX Leasing, Inc. ("MTX"). ECF No. 18-1 at 2-6. Under the terms of that agreement, GECCI agreed to finance the purchase of certain business-related equipment for MTX, and MTX agreed to repay GECCI $322,799.04 in 54 installments beginning in April 2014. *Id.* at 2. MTX granted GECCI a security interest in the equipment as collateral. *Id*. at ¶ 2.1. The Deasons each personally guaranteed the loan agreement. ECF No. 18-1 at 8, 10. In December 2015, GECCI transferred and assigned all of its rights and interests in its accounts

---

[1] A non-moving party's failure to respond to a summary judgment motion does not automatically compel resolution in favor of the moving party. *Mack v. Dillon*, 594 F.3d 620, 622 (8th Cir. 2010).

with MTX to BMO, making BMO the successor-in-interest to both the MTX loan and the two Deason guarantee agreements. Affidavit of Kevin Evers ¶ 14.

MTX failed to make its October 1, 2016 payment to BMO under the terms of the loan agreement, thereby placing it in default. Evers Aff. ¶ 18. The Deasons also failed to make payments under their guarantee agreements. Evers Aff. ¶ 21; Answer ¶ 17. BMO therefore declared the debt to be immediately due and payable. Evers Aff. ¶¶ 39-40; ECF No. 18-1 at ¶ 5.2. As of the date of default, the principal amount due was $131,432.40. Evers Aff. ¶ 40; ECF No. 18-1 at 43. The loan agreement sets interest on all unpaid amounts at 18% per annum. Evers Aff. ¶ 41; ECF No. 18-1 at ¶ 5.3.

Based on its security interest in the equipment, BMO recovered possession of the collateral. Evers Aff. ¶¶ 24-38. BMO notified the Deasons of its intent to sell the collateral and provided them with an opportunity to redeem it. Evers Aff. ¶ 27. Defendants did not redeem, and BMO elected to sell the collateral by public auction. Evers Aff. ¶¶ 28-36. The net proceeds from the sale of the collateral was $36,175.55. Evers Aff. ¶ 37. Under the loan terms, BMO applied those proceeds first to the repossession and sales expenses, then to any late fees due, then to unpaid interest, then to the principal. Evers Aff. ¶ 46. The resulting amount due as of February 28, 2018, according to BMO's calculations, was $140,721.83, with additional interest accruing on the principal at the rate of $65.72 per day. ECF No. 18-1 at 43.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To

support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court views the record and all justifiable inferences in favor of the non-moving party. *Liberty Lobby,* 477 U.S. at 255.

## DISCUSSION

The parties' obligations under the loan agreement are governed by Utah law. ECF No. 18-1 at ¶ 7.6. In Utah, the elements of a breach of contract claim are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 231 (Utah 2014) (internal citation omitted).[2] There is no genuine issue as to any of these elements.

First, a valid contract clearly existed between the parties in the form of the February 2014 loan agreement and guarantee agreements. Those agreements are part of the record. ECF No. 18-1 at 1-10; Evers Aff. ¶ 13. They do not have any apparent formation defects and they clearly spell out the terms of the loan and guarantee arrangements, as summarized above. Second, there is nothing in the record to suggest that BMO failed to perform any of its obligations under the agreements. Third, MTX breached the loan agreement by failing to make payments as of October 2016, placing the Deasons in default under the terms of their guarantee agreements. The loan agreement specifies that default occurs if "Debtor fails to pay when due any amount owed

---

[2] The elements for breach of contract under Minnesota law are the same as under Utah law. *See, e.g., Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1155 (D. Minn. 2011), aff'd, 703 F.3d 1104 (8th Cir. 2013). Therefore, the Court's analysis of the breach claim would not differ if the action were governed by Minnesota law.

by it to Lender" or "Debtor or Guarantor fails to pay any Liabilities when due to Lender." ECF No. 18-1 at ¶ 5.1; Evers Aff. ¶¶ 20-21; Answer ¶ 17. And fourth, there is no genuine issue as to damages. BMO is owed the remaining principal, plus interest, costs, and fees, under the terms of the loan agreement and the guarantee agreements. ECF No. 18-1 at ¶¶ 5.2-5.3. Accordingly, summary judgment is appropriate on BMO's breach of contract claims against the Deasons.

As to the amount of damages, the principal at the time of default was $131,432.40. Evers Aff. ¶ 40. Interest on the unpaid principal accrues at $65.72 per day. *See* ECF No. 18-1 at ¶ 5.3. Proceeds from the collateral sales offset some of the post-default interest,[3] such that the remaining interest owed as of February 28, 2018 was $9,289.43. Evers Aff. ¶ 48. Per diem interest has continued to accrue since that date. Accordingly, BMO is entitled to $140,721.83 plus additional interest of $65.72 per day since March 1, 2018.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment [ECF No. 15] is GRANTED.

2. Judgment in the amount of $140,721.83 is entered against Defendants.

3. Defendants will pay an additional $65.72 per day in prejudgment interest starting from March 1, 2018 until the date judgment is entered. Defendant will pay postjudgment interest in accordance with 28 U.S.C. § 1961.

---

[3] BMO mitigated its damages via a commercially reasonable disposition of the collateral. *See* Utah Code Ann. § 70A-9a-610(2); *see also BMO Harris Bank, N.A. v. Custom Diesel Express, Inc.,* 2017 WL 1367205, at *3 (E.D. Tenn. Apr. 12, 2017) (applying Utah law). BMO notified Defendants of its intent to sell, afforded Defendants an opportunity to redeem the collateral, evaluated the collateral, sold the collateral by unit to maximize resale value, advertised in print and other media, and offered the collateral for auction by a well-established industrial auctioneer. *See* Evers Aff. ¶¶ 29-36.

4. Plaintiff is awarded costs and its reasonable attorneys' fees and expenses and shall submit its application for attorneys' fees and expenses under Fed. R. Civ. P. 54 and LR 54.3(c).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 22, 2018                                       **s/ Joan N. Ericksen**
                                                          JOAN N. ERICKSEN
                                                          United States District Judge